IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN RANNARD**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 08-1747** |
| | ) | **Judge Arthur J. Schwab** |
| **MICHAEL J. ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.    Introduction

Plaintiff, John Rannard (hereinafter "Plaintiff" or "Mr. Rannard"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("the Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") and child insurance benefits ("CIB"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings. After careful consideration of the Administrative Law Judge's ("ALJ") Decision, the memoranda of the parties, and the entire record, the Court will grant in part the Plaintiff's Motion for Summary Judgment and deny Commissioner's Motion for Summary Judgment.

## II.    Procedural History

Plaintiff filed an application for SSI and CIB on September 22, 2004, alleging disability since his birth, April 9, 1986. Plaintiff's claim was denied on December 1, 2004 and he thereafter requested a hearing. The hearing was held on August 29, 2006 before ALJ James Bukes. Plaintiff,

1

appearing with his legal representative, testified at the hearing along with Plaintiff's father, Raymond Rannard, and the vocational expert, Samuel E. Edelmann.

The ALJ issued a decision on March 22, 2007, finding that Plaintiff was not disabled. The ALJ found that Plaintiff was capable of performing any physical work but he is limited to simple repetitive instructions and avoiding work setting changes, close interaction with co-workers, decision making and competitive production rate pace. The ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy such as a stock clerk, machine tender and office cleaner. On October 31, 2008, the Appeals Council affirmed the ALJ's decision, thus becoming the final decision of the Commissioner. Plaintiff then filed his complaint herein seeking judicial review of the Commissioner's final decision.

## III.  Statement of the Case

In the decision dated March 22, 2007, the ALJ made the following specific findings:

1. The claimant attained age 22 on April 8, 2008, the day before his 22nd birthday (20 C.F.R. 404.102 and 416.120(c)(4)).

2. The claimant has not engaged in "substantial gainful activity" since April 9, 1985, the alleged onset date (20 C.F.R. 404.1520 (b), 404.1571, 416.920(b) and 416.971).

3. Since April 9, 1986, the alleged onset date of disability, the claimant has had the following severe impairments: attention deficit/hyperactivity disorder (ADHD), learning disorder, impulse disorder, depressive disorder and borderline intellectual functioning (20 C.F.R. 404.1520(c) and 415.920(c)).

4. Since prior to 2004, the claimant has not had an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that, since prior to 2004, the claimant has had the residual functional capacity to perform work. The claimant is limited to following simple repetitive instructions and avoiding work setting changes.

He is limited to reading at the seventh grade level and math at the third grade level. The claimant should avoid close interaction with co-workers, decision making and competitive production rate pace.

6.    The claimant has no past relevant work (20 C.F.R. 404.1565 and 416.965).

7.    The claimant is a younger individual age 18-44 (C.F.R. 404.153 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. 404.1568 and 416.968).

10.    Since prior to 2004, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform jobs that exist in significant numbers in the national economy (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.    The claimant has not been under a disability as defined in the Social Security Act, since prior to 2004 (20 C.F.R. 404.305(a)(5), 404.1520(g) and 416.920(g)).

Tr. 13-21.

## IV.   Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review

---

[1]Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business ...
42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n. 1 (3d Cir.2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir.1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir.1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a

---

42 U.S.C. § 1383(c)(3).

preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir.2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir.2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' " Id. at 87; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some

"medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir .1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied.... In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work....

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The

ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step.... Plummer, 186 F.3d at 428 (certain citations omitted). See also Rutherford, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)).

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Stunkard*, 841 F.2d at 59; *Kangas,* 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy...." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423(d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert-Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d,

1276 (3d Cir.1987) (leading cases on the use of hypothetical questions to VEs)[3]. *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.' ") Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n. 8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir.2002); *see also Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of

---

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir.1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,' "), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971)...."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she

found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir.1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v.*

*Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir.1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir.1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green*, 749 F.2d at 1070-71 (emphasis added), *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir.1987); *Akers v. Callahan*, 997 F.Supp. 648,

658 (W.D.Pa.1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir.1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir.2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports ...." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) .... " *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for

no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

> Moreover, the Commissioner/ALJ:
>
> must "explicitly" weigh all relevant, probative and available evidence.... [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.... The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit...."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.... Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.... 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

Medical Source Opinion of "Disability"

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir.1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. § 404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. § 404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. § 404.1527(b), (d) (2002)[4]. Medical opinions on matters reserved

---

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in

for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. § 404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled

---

deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d) (6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored...." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record ..." 20 C.F.R. § 404.1527(d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527(d)(1- 6).

 State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon

---

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

## V.  Discussion

Plaintiff's primary argument is that the ALJ erred, as a matter of law, when he improperly rejected Plaintiff's IQ score based on merely personal observations and speculative inferences drawn from the record.  Plaintiff's contention is that the ALJ should have found that he met the requirements of Listing 12.05 C.[6] Plaintiff also argues that the ALJ was estopped from finding that

---

[6] The 12.05 Listing Requirements state:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

Plaintiff did not meet the criteria for Listing 12.05 C because Plaintiff had previously been awarded benefits on that basis.

The Court of Appeals has stated that to meet the requirements of 12.05 C the claimant must "(i) have a valid verbal, performance or full scale IQ of 60 through 70, (ii) have a physical or other mental impairment imposing additional and significant work-related limitations of functioning, and (iii) show that the mental retardation was initially manifested during the developmental period (before age 22)." *Markle v. Barnhart,* 324 F.3d 182, 187 (3d Cir. 2003). In reviewing the validity of an IQ score the ALJ may reject scores that are inconsistent with the record, however, it is incumbent that the ALJ not reject scores based upon his own "personal observations of the claimant and speculative inferences drawn from the record." *Markle*, 324 F.3d at 187 (*quoting Morales*, 225 F.3d at 318).

Here, the ALJ stated in his opinion that:

> I agree with the state agency medical consultant that the claimant does have mental impairments but they do not prevent him from working and are not disabling. I also agree with HSC that claimant has borderline intellectual functioning rather than mental retardation. The record and claimant's activities indicate a higher performance IQ than 68. He does not meet listing 12.05 C or D.

Tr. 19. The ALJ provided no citations to the record in making his finding that Plaintiff did not meet Listing 12.05. Plaintiff states in his brief that "there can be no dispute that [Plaintiff] satisfies the

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P., Appx. 1

first prong [of 12.05 C]. The ALJ noted that [Plaintiff] has an IQ score of 68." Pl.'s Br. at 8. In making this claim, Plaintiff cites to the ALJ's opinion in the record, which as previously stated did not itself provide citation.

In reviewing the record, the Court cannot locate any IQ score of 68 as mentioned by the ALJ in his opinion.[7] Without the IQ score in the record, this Court cannot review the ALJ's determination of the IQ score. *See Fargnoli*, 247 F.3d at 42 n.6 ("[A]fter reviewing the record, we cannot find two of the opinions relied on by the Commissioner. We therefore cannot consider them as a basis for finding the ALJ's decision is supported by substantial evidence."). Furthermore, this Court cannot affirm the finding that Plaintiff does not meet Listing 12.05 C based on substantial evidence when there are gaps in the record. *Id.* at 44 n. 7. As such, the ALJ's 12.05 Listing determination cannot be said to be supported by substantial evidence in the record and the case must be remanded.

Plaintiff also argues that the ALJ failed to consider or discuss the fact that the Commissioner had allegedly previously awarded benefits to Plaintiff under Listing 12.05 C. Plaintiff points out that during the hearing and in the medical records, it is mentioned that Plaintiff had previously been awarded benefits. Tr. 104, 305.

> It is well recognized that collateral estoppel and the related doctrine of res judicata apply not only to judicial decisions but also to administrative decisions. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22,(1966). For res judicata to apply to an administrative decision, there are, however, certain conditions which must be found to exist:
>
> > res judicata may only be properly applied to preclude a subsequent claim for disability benefits where the "same" claimant has filed a previous application based on the "same" issues and where such prior

---

[7]A WISC-III IQ test dated March 1, 2001, was found in the record which indicated that Plaintiff received a verbal IQ of 81 and full scale of 78. Tr. 153.

determination has become final by virtue of administrative judicial
action.

*Tobak v. Apfel*, 195 F.3d 183, 186 (3d Cir.1999).

*Pieczynski v. Barnhart*, 430 F.Supp.2d 503, 510 (W.D.Pa. 2006). Plaintiff argues that the ALJ should have considered if a prior decision by the Commissioner merited the effect of collateral estoppel. In reviewing the record, however, the mere statements that Plaintiff was on disability in the past was not enough to merit a collateral estoppel or res judicata analysis. The lack of any substantial evidence of a prior determination in the record precludes any substantive analysis of collateral estoppel or res judicata by the ALJ. It cannot be said, therefore, that the ALJ erred in not providing a analysis.

IV.    **Conclusion**

The Court has reviewed the ALJ's decision, and determines that his finding that Plaintiff did not meet the 12.05 C Listing criteria is not supported by substantial evidence. This case is remanded for the ALJ to identify the relevant IQ score, if any, and properly analyze whether Plaintiff meets the 12.05 C Listing. Accordingly, the Court will grant the Plaintiff's Motion for Summary Judgment in part, and deny Commissioner's Motion for Summary Judgment.

An appropriate order will follow.


                                                    s/ Arthur J. Schwab
                                                    Arthur J. Schwab
                                                    United States District Judge


Dated:          July 7, 2009.

cc/ecf:         All counsel of record.

21